IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES RICHARD KOSLOVIC, JR., )
        Plaintiff, )
         )
        v. ) 2: 12-CV-1745
         )
COMMISSIONER OF SOCIAL )
SECURITY, )
        Defendant. )

MEMORANDUM and ORDER

Mitchell, M.J.:

      Presently before the Court for disposition are cross motions for summary judgment.

      On December 3, 2012, Charles Richard Koslovic Jr., by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 *cf*. For the reasons set forth below, the plaintiff's motion for summary judgment (ECF 11) will be denied; the defendant's motion for summary judgment (ECF 13) will be granted and the determination of the Commissioner will be affirmed.

      The instant application for Supplemental Security Income Benefits was filed on June 4, 2009 (R.172-178). On September 1, 2009, benefits were denied (R.89-93). On October 8, 2009, the plaintiff requested a hearing (R.94) and pursuant to that request a hearing was held on March 30, 2011 and continued to July 11, 2011 (R.30-80). In a decision filed on August 17, 2011, an Administrative Law Judge denied benefits (R.12-25). On October 15, 2012, the Appeals

Council affirmed the prior determination (R.1-3). The instant complaint was filed on December 3, 2012.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorn v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Camber. 529 F.3d 198 (3d Cir. 2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999)

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F.3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> The inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which

> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12
> months.
>
> In addition, a person will be considered disabled if he/she is
>
> > (a) ... permanently and totally disabled as defined under a State
> > plan approved under title XIV or XVI of the Social Security Act,
> > as in effect for October 1972; (b) ... received aid under the State
> > plan ... for the month of December 1973 and for at least one
> > month prior to July 1973; and (c) ... continue[s] to be disabled as
> > defined under the State plan.

20 C.F.R. § 416.907.

> A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:
>
> > impairment [which] result[s] from anatomical, physiological, or
> > psychological abnormalities which [are demonstrated] by
> > medically acceptable clinical and laboratory diagnostic
> > techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on March 30, 2011 and continued to July 11, 2011 (R.30-80), the plaintiff appeared with counsel (R.40) and testified that he was born on February 21, 1971 (R.45); that he completed high school (R.48); that he worked in heavy construction (R.48); that he last worked in 2004 (R.52) and that he is receiving public assistance (R.46).

The plaintiff also testified that he experiences back, neck and leg pain (R.57); that his back has gotten worse (R.51); that he takes pain medication and attends therapy (R.53,54-55); that he can sit for about twenty minutes (R.57); that he spends most of his day in bed and occasionally cannot get out of bed (R.58, 69); that he does not perform any household chores (R.60); that in 2003 he was diagnosed with a bi-polar disorder (R.62) and that he experiences anxiety attacks and anger management problems (R.62).

At the hearing a vocational expert was called upon to testify (R.76-79). He characterized the plaintiff's past work as heavy skilled labor (R.77). When asked to assume an individual of the plaintiff's age, education and past work experience who is limited to sedentary work activity the witness responded that such an individual could not perform the plaintiff's prior work but would be capable of participating in a large number of other gainful activities (R.78). However, he further testified that if the individual was "off task" at least fifteen to twenty percent of the workday, he could not be gainfully employed (R.78). The same conclusion could be drawn if the individual had to take several unscheduled breaks during the day (R.79).

In addition, certain other evidence was considered.

The plaintiff was approved for return to work as a brick-layer on January 23, 2002 (R.467).

The plaintiff received treatment at the University of Pittsburgh Physicians between January 23, 2002 and May 15, 2002. On the latter date it was reported that the plaintiff had minimal scaphoid tenderness, was back to work full-time and had "great" range of motion in his wrist and fingers (R.453-456).

In a report of an MRI performed on August 21, 2001 a small L4-L5 disc bulge was observed (R.458).

In a report from the Western Pennsylvania Hospital dated October 8, 2002, following an evaluation for left-sided low back pain, physical therapy and anti-inflammatory agents were recommended (R.459-462).

X-rays of both of plaintiff's wrists taken on December 8, 2003 did not disclose a fracture or dislocation (R.469-470).

In a report dated December 30, 2003, Dr. B.L. Rottschaefer noted chronic lumbosacral strain and cervical strain which was becoming worse with time, as well as moderate depression. The plaintiff's depression was said to not be limiting and the doctor observed that the plaintiff could not physically perform his prior work as a mason (R.472-480).

The plaintiff was treated at the East Suburban Orthopedic Associates between December 8, 2003 and January 15, 2004 for a wrist fracture which healed with good alignment. It was concluded that he could return to his normal activities (R.482-483).

The plaintiff was treated by Dr. Rottschaffer between December 7, 2001 and February 20, 2004 for a right scaphoid fracture and lumbosacral and cervical strain as well as a wrist fracture. Medication and exercise were prescribed (R.485-522).

The plaintiff was treated at the University of Pittsburgh Physicians between January 18, 2008 and November 14, 2008. He had a healed scaphoid fracture with a screw in place, ulnar impact syndrome and right wrist pain (R.241-266).

The plaintiff was treated at West Penn Hospital between April 17, 2009 and April 20, 2009 for managements of multiple abscesses. The latter were drained and treated with antibiotics (R.269-292).

The plaintiff was treated at the Creighton Medical Center between September 17, 2007 and July 10, 2009 for MRSA abscesses, hepatitis C, chronic back pain and allergies (R.293-324).

In a residual functional report completed on August 31, 2009, it was noted that the plaintiff could occasionally lift one hundred pounds, frequently lift fifty pounds and stand, walk or sit for about six hours (R.82-88).

In a psychiatric review completed on August 31, 2009, Douglas Schiller, Ph.D. noted a mild anxiety disorder (R.325-337).

The plaintiff had various examinations conducted between April 17, 2009 and October 6, 2010 for abscesses, cervical, lumbar, ankle and wrist strains (R.361-398).

The plaintiff was treated at the Alli-Kiski Medical Center between February 15, 2011 and February 19, 2011 for low back pain following a motorcycle accident (R.401-405).

In a note of treatments on February 17, 2011 and March 7, 2011, Robert A. Biddle, D.C. diagnosed lower back pain and performed manipulations (R.400).

The plaintiff was treated by Dr. Mir between August 27, 2008 and April 15, 2011 for arthritis and low back problems. Medication was prescribed (R.338-360).

The plaintiff was treated at the New Kensington Family Health Center between November 10, 2010 and May 25, 2011. An MRI revealed lumbar facet hypertrophy and disc bulging as well as cervical degeneration. Anxiety was also diagnosed and treated (R.406-430).

In a report of an evaluation conducted on May 31, 2011 at Milestone Centers, Inc. a diagnosis of bipolar II disorder and panic disorder was made (R.431-446).

In a residual functional capacity evaluation completed on June 23, 2011, depression and anxiety are noted. In addition it was reported that the plaintiff could walk, stand or sit for fifteen minutes, and frequently lift ten pounds (R.447-452).

A report covering outpatient treatment at Milestone between the period from May 31, 2011 and September 15, 2011 notes depression, anxiety and a bipolar and panic disorder (R.523-540).

Based on the evidence presented, the Commissioner determined:

The claimant has the following severe impairments: lumbar and cervical degenerative disc disease, bipolar disorder, and anxiety disorder. The impairments … cause the more than the minimal limitations in work-related functions. The claimant's impairments restrict his physical and mental functional capacity. While it is reasonable to find that these impairments limit his functioning, the limitations are fully accommodated by [his] residual functional capacity [determination].

The claimant's degenerative disc disease of the lumbar and cervical spine have been considered … [and] do not meet or medically equal the requirements of any of the impairments set forth [in the regulations] as he is able to ambulate and perform fine and gross movements effectively without the use of assistive devices.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the [disability] criteria…

In activities of daily living, the claimant has moderate difficulties…

With regard to concentration, persistence or pace, the claimant has moderate difficulties…

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the … [disability] criteria are not satisfied…

Further, the claimant is found to have only mild restriction in his activities of daily life because of his mental health impairments…

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work …

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the … residual functional capacity assessment.

Despite his allegations of on-going pain, the various medical providers noted that he could walk without assistance, had appropriate extremity strength and had a good range of motion in that he could flex and extend his spine with no difficulties…

> With reference to the claimant's mental disorders … he was … found to have a global assessment of functioning … scores of 55 to 65, indicative of mild to moderate symptoms...
>
> In addition to considering the claimant's medical records with reference to his diagnoses, I have considered the claimant's credibility. The record reflects significant gaps in the claimant's history of treatment. Additionally, the record reveals that the claimant failed to follow-up on recommendations made by the treating doctors. At times, the claimant would fail to show for appointments. He also failed to follow up with medications and only attended one physical therapy session. Further, in May 2011, the claimant's primary care physician noted that he did not trust giving the claimant a prescription pain medication given the claimant's inconsistent history. His lack of follow through and minimal treatment suggests that the symptoms may not have been as serious as has been alleged…
>
> The record also includes various inconsistent statements made by the claimant…
>
> A review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date. This raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments…
>
> After a careful consideration of all the evidence and from the opinion evidence as weighed, I do not find the claimant credible. Further, I find that the residual functional capacity assessment … is supported by the totality of the evidence …
>
> Because the claimant is limited to a residual functional capacity for sedentary work, he is unable to perform his past relevant work …
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform … I [also] conclude that … the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate … (R.17-25).

Credibility determinations are resolved by the Commissioner. <u>Diaz v. Commissioner</u>, 577 F.3d 500, 506 (3d Cir. 2009). The evidence presented demonstrates that while the plaintiff experiences musculo-skeletal impairments the conclusion that he has exaggerated their impact is supported by the record. Clearly, as the Commissioner concluded, Koslovic is unable to return to his former limited employ in heavy construction

but the finding that he is capable of engaging in sedentary work is supported by the record. Additionally, while he also suffers from mental impairments, the record also supports the conclusion that either individually or in combination, these too do not meet the criteria for a finding that they are disabling. Rather, with limited restriction on his work environment, the plaintiff should be able to maintain gainful employment.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. <u>Lichtenstein v. UPMC</u>, 691 F.3d 294, 300 (3d Cir. 2012). In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, the plaintiff's motion for summary judgment will be denied; the defendant's motion for summary judgment will be granted and the decision of the Commissioner will be affirmed.

An appropriate Order will be entered.

s/ Robert C. Mitchell,
United States Magistrate Judge

ORDER

AND NOW, this 30th day of May, 2013, for the reasons set forth in the foregoing Memorandum, the plaintiff's Motion for Summary Judgment (ECF 11) is DENIED; the defendant's Motion for Summary Judgment (ECF 13) is GRANTED, and the determination of the Commissioner is AFFIRMED.

                                                      s/ Robert C. Mitchell
                                                     United States Magistrate Judge